ORIGINAL

FILED
MAY - 8 2006
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-375 C

*WALTER W. WEIBLER, Plaintiff*

*v.*

*THE UNITED STATES, Defendant*

---

# COMPLAINT

---

1. This Court has subject matter jurisdiction over this matter pursuant to U.S.C., § 1498 (a) inasmuch as this is an action arising out of the infringement by the U.S. Department of the Navy of a patent owned by the plaintiff.

2. The Plaintiff, Walter W. Weibler, is an individual doing business in Colorado as "W Cubed Manufacturing & Engineering," a sole proprietorship. He was born May 17, 1937, in Denver, Colorado, is currently almost 69 years of age. Mr. Weibler makes his living on a daily basis from constructing and selling welded devices, such as heat exchangers, and has done so for over 22 years.

3. The Department of the Navy, a department of the United States, contracted with UNIVERSAL TECHNOLOGIES, INC. (UTI) to build a plastic waste disposal system. The system utilized a component called a "heat exchanger."

4. UTI offered to purchase a designated number of new heat exchangers that were based on a design created by the plaintiff and, based on such promise, the plaintiff did design a new style of heat exchanger and built several prototypes that would substitute for the specified heat exchanger that was going to cost UTI $3,400 per unit.

5. Plaintiff applied for a patent thereon on August 16, 1996, after it was learned that UTI had secretly begun manufacturing heat exchangers using the plaintiff's trade secret design and using these units in a plastic waste disposal unit purchased by the U.S. Navy. Jesse Rogers, the President of UTI was mailed written notice on August 26, 1996, that the subject heat exchanger was based on a trade secret design created by the plaintiff and that the use of such heat exchangers, without the express consent of the plaintiff, was improper and illegal and the continued use of same would be willful and wanton. The letter also advised UTI that a patent application had been filed on August 16, 1996. Despite such notice, the improper use of the trade secret design and proprietary information of the plaintiff continued. The U.S. Department of the Navy continued to buy such units even though they could have purchased heat exchangers from the supplier the Navy had previously designated as "suggested source of supply" on their drawing dated September 30, 1994.

6. On October 20, 1998, Patent 5,823,247 ("The 247 Patent") issued wherein the inventor was designated as Walter W. Weibler, 7652 Webster Way, Arvada, Colorado 80003.

7. Following the issuance of the Patent, the plaintiff, through Ancel W. Lewis, Jr., an attorney for the plaintiff, again placed UTI and the Department of the Navy on notice of the Navy's infringement of The 247 Patent, the device known as the "Weibler Heat Exchanger."

8. After UTI continued to manufacture and deliver the Weibler Heat Exchanger to the Department of the Navy, U.T.I. was sued in the United States District Court for the District of Colorado specifying both contract and trade secrets theories, and the U.S. District Court held in favor of the plaintiff on the basis of misappropriation of trade secrets. The Court dismissed the contract claim based on the U.C.C. Statute of Frauds since the offer to purchase was never reduced to a writing, although it had been acknowledged by UTI

9. The Court did not award damages following the date of issuance of The 247 Patent since the theory of trade secret\ misappropriation was no longer applicable.

10. Acting patent counsel for the Department of the Navy responded on November 6, 1998, advising Mr. Lewis that the plaintiff could file an Administrative Claim for patent infringement.

11. Following the June 21-30, 1999 trial to the United States District Court and the District Court's October 20, 1999 decision in favor of the plaintiff, the plaintiff, through counsel, filed an Administrative Claim dated May 3, 2000.

12. The U.S. Navy took over four (4) years and four (4) months to respond to the claim, which it denied on August 17, 2004. On October 30, 2002, the U.S. Navy filed an *ex parte* re-examination of The 247 Patent. This reexamination resulted in confirmation of all 12 claims of the patent on October 4, 2005. The *Ex Parte Reexamination Certificate* issued April 18, 2006.

13. On August 10, 2005, the U.S. Department of the Navy was asked to reconsider its previous denial in light of the confirmation of The 247 Patent. Jane Burrows, who was then in charge of the applicable department, responded by telephone during the end of December, 2005, that she would respond. Subsequently, Ms. Burrows orally advised plaintiff that there would be no revision of the denial and that a letter would be forthcoming. Such a letter has never been received by plaintiff, if it was drafted.

14. At all times relevant hereto, the plaintiff has been the owner of The 247 Patent.

15. From and after October 20, 1998, the United States has been actively and intentionally infringing The 247 Patent by manufacturing a similar device that infringes, at the least Claims 1, 6, 7, 8, 9, 10, 11, and 12 of The 247 Patent, which is attached hereto as Exhibit 1 and incorporated by reference as if set forth in full.

16. Following the first complete drawing of the heat exchanger built by UTI using the plaintiff's design (which drawing was dated June 10, 1996 and described as "Initial Release"), UTI redrew the heat exchanger and

issued drawing designated as "Revision A" dated June 28, 1996, which added a nameplate for W Cubed Manufacturing [plaintiff's company]. Each of the following revisions, designated as "Revisions B through J" contained minor modifications in design which are derivative of The 247 Patent design and each such Revision infringed the patent claims referenced in Paragraph 15 above.

17. Plaintiff is entitled to be awarded his reasonable and entire compensation for such use and manufacture, including all of its damages, a reasonable royalty, a sum to compensate the plaintiff for delay, its reasonable attorneys fees, and all damages which result from the "taking" of its property by the United States without just compensation.

18. According to information received from the U.S. Navy in response to Freedom of Information requests, as of June 2000, at least 702 heat exchangers were sold to the U.S. Navy by UTI, which were copied from the plaintiff's design. Of these, the U.S. District Court determined that 218 of such units were shipped prior to the issuance of The 247 Patent and the Court awarded a royalty of $510 per unit to the plaintiff. Accordingly, at least 484 heat exchangers that infringe The 247 Patent remain uncompensated, were manufactured by UTI, and shipped to the U.S. Department of the Navy for use by such Department.

19. Plaintiff demands reasonable and entire compensation as set forth herein and judgment for the same in the amount of $246,840.00, plus the same compensation for all units delivered after June, 2000, to date and units to be built in the future, calculated at $510 per unit [which was the royalty determined by the United States District Court in ***Weibler v. Universal Technologies, Inc.***], together with costs, fees, delay compensation and such other relief as is just.

Respectfully submitted,

James C. Bull, Attorney for the Plaintiff
Admitted to the Court of Claims: April 12, 1974

UNITED STATES PATENT AND TRADEMARK OFFICE

# CERTIFICATE OF CORRECTION

PATENT NO. : 5,823,247

DATED : October 20, 1998

INVENTOR(S) : Walter W. Weibler

Page 1 of 7

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

The title page, showing the illustrative figure should be deleted to be replaced with the attached title page.

Drawing sheets, consisting of Figs. 1-5, should be deleted to be replaced with the Drawing Sheets, consisting of Figs. 1-5, as shown on the attached page.

Signed and Sealed this

Twenty-seventh Day of July, 1999

Attest:

Attesting Officer

Q. TODD DICKINSON

*Acting Commissioner of Patents and Trademarks*

**EXHIBIT 1**

# United States Patent [19]

Weibler

[11] Patent Number: 5,823,247

[45] Date of Patent: Oct. 20, 1998


[54] HEAT EXCHANGER AND METHOD


[76] Inventor: Walter W. Weibler, 7652 Webster Way, Arvada, Colo. 80003



[21] Appl. No.: 689,768

[22] Filed: Aug. 16, 1996

[51] Int. Cl.[6] .................... F28D 9/02

[52] U.S. Cl. .......... 165/76; 165/166; 165/DIG. 384; 228/183

[58] Field of Search .................. 165/165, 166, 165/76; 228/183



[56] References Cited

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1,548,159 | 8/1925 | Murray | 165/166 |
| 2,596,008 | 5/1952 | Collins | 165/166 X |
| 2,959,400 | 11/1960 | Simpelaar . | |
| 3,229,763 | 1/1966 | Rosenblad | 165/166 |
| 4,569,391 | 2/1986 | Hulswitt et al. | 165/166 |
| 4,688,631 | 8/1987 | Peze et al. | 165/166 |
| 5,069,276 | 12/1991 | Seidel | 165/166 |
| 5,303,771 | 4/1994 | Des Champs | 165/165 |
| 5,469,914 | 11/1995 | Davison et al. . | |

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1183834 | of 0000 | Canada . | |
| 0040890 | of 0000 | European Pat. Off. . | |
| 1389833 | 1/1965 | France | 165/166 |


*Primary Examiner*—Allen Flanigan
*Attorney, Agent, or Firm*—Ancel W. Lewis, Jr.

[57] ABSTRACT


A heat exchanger device and method of making same disclosed has a heat exchanger core and a stack of inner plates with alternating hot and cold flow fluid passages producing diagonal flow therethrough. One embodiment adds a pair of core retaining plates with end portions extending beyond the core with apertures at precise locations to connect with connectors of equipment to which it is coupled and the other embodiment has end connectors that weld to the core to provide straight in line fluid flow.


12 Claims, 5 Drawing Sheets



# HEAT EXCHANGER AND METHOD

## TECHNICAL FIELD

This invention relates to heat exchangers and more particularly to flat plate heat exchangers and a method of making same.

## BACKGROUND ART

Heat exchangers have a wide range of heating and cooling applications wherever heat transfer between two fluids is required. In general in a heat exchanger two fluids, one hot and the other cold, are passed through alternate passages for heat transfer to the two fluids.

Simpelaar No. 2,959,400 discloses a flat plate heat exchanger wherein layers of rectangular sheets are connected at their edges and corner pieces for support and hot and cold fluids are caused to flow in opposite directions and provide an interchange of energy between the two.

Carlson Canadian Patent No. 1,183,834 discloses a flat plate heat exchanger chiefly characterized by flat plates seperated by spacers and having inlets and outlets in opposite sides of the heat exchange elements.

Konings European Patent No. 0,040,890 discloses a flat plate heat exchanger with internal baffles establishing a zig zag flow pattern.

Davison et al. No. 5,469,914 discloses a flat plate heat exchangers having stacks of plates with spaces between the plates and forms a V-shape at each end and the two outside plates are made integral with the core.

## DISCLOSURE OF THE INVENTION

The heat exchanger device and method has a heat exchanger core having a first plate and a second plate and a stack of parallel spaced inner plates between the first and second plates with spaces between the inner plates defining passages for the flow of hot and cold fluids for heat transfer between the two fluids. The core is made separately and tested for leaks and then a first core retaining plate is affixed to one face of the core and a second core retaining plate is affixed to an opposite face of the core and end wall portions are provided at the opposite ends of the core for forming flow compartments into which fluids may be conducted toward and away from the heat exchanger core. Each of the first and second core retaining plates have a pair of flow apertures at preselected precise locations in relation to flow line connections to which the device is connected for fluid flow. Each pair of flow apertures are in opposite end portions of the core retaining plates beyond the ends of the core.

## BRIEF DESCRIPTION OF THE DRAWINGS

Details of this invention are described in connection with the accompanying drawings which like parts bear similar reference numerals in which:

FIG. 1 is a top plan view of the heat exchanger device embodying features of the present invention.

FIG. 2 is a side elevation view of the heat exchanger device.

FIG. 3 is an end elevation view of the heat exchanger device.

FIG. 4 is an exploded view partially broken away of the heat exchanger device.

FIG. 5 is an exploded view of the heat exchanger shown in FIGS. 1–4 prior to assembly and welding.

FIG. 6 is a sectional view taken along lines 6—6 of FIG. 2.



FIG. 6A is a sectional view along line 6A—6A showing a detail showing the weld of step 2 of the welding procedure.

FIG. 7 is a sectional view taken along line 7—7 of FIG. 2.

FIG. 8 is a sectional view taken along line 8—8 of FIG. 2.

FIG. 9 is a perspective view of two of the flat inner plates before assembly.

FIG. 10 is a perspective view of another heat exchanger device with the same core and four straight on end caps.

## DETAILED DESCRIPTION

Referring now to the drawings there is shown a heat exchanger device 12 having an oblong housing of body 13, two flow connectors 14 and 15 on one face herein shown as the top of the body and two flow connectors 16 and 17 on the bottom of the other face herein shown as the body 13. Each flow connector shown and with reference to connector 14 has a tubular portion 18 and a circular flange portion 19 with a center hole 20 and with four circumferentially spaced holes 21 in the flange portion 19 for mounting purposes.

There is a preselected fixed longitudinal distance between the center lines of connectors 14 and 15 designated X1 and a preselected lateral distance designated Y1 and a preselected fixed longitudinal distance between the center line of connectors 16 and 17 designated X2 and a preselected lateral distance designated Y2. There is a preselected fixed distance between the center lines may be precisely located using the attachable core retaining plates described hereafter.

The length of the connectors 14, 15, 16 and 17 along the center lines may also vary to meet preselected mounting requirements. The length between the ends of connectors 14 and 16 is designated Z1 and the length between the ends of connectors 15 and 17 is designated Z2. The end-to-end dimensions of the connectors 14 and 16 and between 15 and 17 according to the present invention may be readily varied to meet any installation requirements.

The body 13 includes a heat exchanger core 22 having a first plate 23 shown at the top, second plate 24 shown at the bottom with a stack of parallel spaced inner plates 26 between the first and second plates with spaces between the inner plates defining alternate flow passages for hot and cold fluids. As shown in FIG. 6 the outer core plates 23 and 24 are thicker than the inner core plates 23 and 24. The inner core plates 23 and 24 are thin to effect good heat transfer. The outer core plates are constructed to resist pressure. In particular the outer core plates 23 and 24 are of a thickness or material having a greater ability to resist pressure than the inner core plates 23 and 24 so the core is able to withstand the pressure of leak testing. The hot flow passage is designated A and the cold flow passage is designated B with a solid arrow showing hot fluid and the dashed arrow showing cold fluid.

Referring now to FIG. 9 the inner plates 26 and 27 of core are shown to have a downwardly inclined end section 28 along half the width and an upwardly inclined section 29 along the other half the width at one end of the plate. There is an upwardly inclined end section 29 along half the width and a downwardly inclined end section 28 along the other half of the width at the other end. Each inclined end section has a straight end section 30 parallel to the plane of the plate. Inner plate 27 has an upwardly inclined end section 29 opposite each downwardly inclined section 28 on inner plate 26 and a downwardly inclined end section 28 opposite each upwardly inclined section 29 on inner plate 26 so that the

downwardly inclined end section 28 of the upper inner plate 27 fits against an upwardly inclined end section 29 of the lower inner plate 26 along one half the plate and the upwardly inclined section 29 of the upper inner plate 27 and a downwardly inclined end section 28 on the other half at one end flare away. This is reversed at the other end so the flow is diagonally across the plates. A longitudinal edge spacer 31 extends along both edges between the plates to separate the plates. Inner plates 26 and 27 alternate in core 22 so that the diverging end sections and converging end sections alternate from the top to the bottom of the core. As seen in FIG. 6A the longitudinal spacer between the diverging end sections extends further than the longitudinal spacer between the converging end sections. The diverging end sections are welded along the abutting flat end surfaces 30. The plate 26 has indentations or dimples 35 in a preselected pattern which provide strength and maintain spacing between plates.

In accordance with the present invention the core is made first, tested for leaks and then first and second core retaining plates 41 and 42 are secured to opposite faces of the core, respectively herein shown as the top and bottom of the core. The first core retaining plate 31 has opposed first end portions 44 and 45 that extend beyond the ends of the core and similarly the second plate 42 has opposed second end portions 46 and 47 that extend beyond the ends of the core. The first plate 41 has a pair of opposed apertures 51 and 52 and end portions 44 and 45, respectively, that are precisely located in relation to the flow line connections to which the device is connected. The second plate 42 has a pair of opposed apertures 53 and 54 in the end portions 46 and 47, respectively, that are also precisely located in relation to flow line connectors to which the device is connected.

A first end wall portion 60 at one end of the core 22 includes three spaced longitudinally extending divider plates 61, 62 and 63 and two end plates 64 and 65 secured at one end of the core 22 between the end portions of the first and second core retaining plates to form first flow compartment 68 in flow communication with opening 51 and a second flow compartment 69 in flow communication with opening 53. A second end wall portion 70 identical to end wall portion 60 includes three spaced, longitudinally extending divider plates 71, 72 and 73 and two end plates 74 and 75 to form a third flow compartment 78 in flow communication with opening 54 and a fourth flow compartment 79 in flow communication with opening 52.

The core 22 is frequently made of an exotic material such as titanium. The above construction allows the core to be tested for leaks before final weldments to the core retaining plates and allows for repair should a leak be detected. The use of separate plates for strengthening of the core also allows the flow apertures to be at precise positions in relation to the equipment to which they are attached. Frequently, the equipment to which they are attached such as pumps or molds is a very close fitting arrangement and precise close tolerances are required to attach the exchanger to associated equipment.

According to the method of the present invention in making core 22 the first step is to weld the end joints of each inner plate at the edges of the inclined sections at both ends of the plates. Several of the weld joints are indicated by the letter W. The second step has the welding of the side corner joints between the inner plates and spacers closed as shown in FIG. 6A. Preferably a filler wire is used. The third step involves closing the end joint corners and filler wire is used. Step four involves welding the center of the end joint weld which separates the fluid cavities with a filler wire weld. The fifth step involves the welding of the edge spacer and inner plate joints. At the end of the fifth step the heat exchanger core 22 is completed and is tested for leaks between fluid cavities as well as any external leaks.

In the sixth step the fluid connectors 14–17 are welded to the outside of the core retaining plates 41 and 42. The seventh step involves having the heat exchanger core located on the bottom outside retaining plate and equal distance from the end and welding the plate across the width of the plate with a filler wire using a fillet weld. The eighth step involves welding the center divider plates 62 and 72 to the heat exchanger core and to the outside core retaining plate. In step nine the top outside core retaining plate is welded to the heat exchanger core 22 across the width and at the joint created with the center plate. Step ten involves welding the side plates 61, 63, 71 and 73 to the core and to the top and bottom of the retaining plates. In step eleven the end plates 64, 65, 74 and 75 are welded to the top and bottom core retaining plates 41 and 42 and the center plates 62 and 72. The device is then complete and again tested for leaks.

Referring now to FIG. 10 there is shown a core 22 having four identical straight on end flow connectors or caps 82 connected to the opposite ends of the core 22 to pass the hot and cold fluids straight on or longitudinally from the ends in a linear flow. These end flow connectors or caps 82 have a hollow rectangular base section 83 with two side by side corresponding with the size of the end of the core and a tubular section 84 with external threads for line connecting purposes. With this embodiment the core can be tested prior to installing the end connectors.

Although the present invention has been described with a certain degree of particularity, it is understood that the present disclosure has been made by way of example and that changes in details of structure may be made without departing from the spirit thereof.

What is claimed is:

1. A heat exchanger device comprising:

a separately constructed, leak tested heat exchanger core having flat opposed first and second outer core plates, a stack of parallel spaced inner core plates between said first and second outer core plates, said outer core plates being constructed of a thickness or material having a greater ability to resist pressure than said inner core plates with spaces between said inner core plates defining alternate flow passages for hot and cold fluids, said outer core plates extending parallel to said inner core plates,

an attachable first core retaining plate affixed to one face of said core and extending parallel to said first outer core plate having opposed first and second end portions extending beyond the ends of said core, and having a first pair of flow apertures at preselected precise positions in relation to flow line connectors to which the device is connected,

an attachable second core retaining plate affixed to an opposite face of said core and extending parallel to said second outer core plate having opposed first and second end portions extending beyond the ends of said core with a second pair of apertures at preselected precise positions in relation to flow line connectors to which the device is connected for fluid flow,

attachable first end wall portions connected to said first and second core retaining plates at one end of said core forming first flow compartments to pass fluid toward and away from said core and through one each of said first and second pairs of apertures, and

attachable second end wall portions connected to said top and bottom core retaining plates at an opposite end of said core forming second flow compartments to pass fluid toward and away from said core and through one each of said other of said first and second pairs of apertures.

* 2. A device as set forth in claim 1 wherein said device has selected dimensions between the center lines of said apertures of each of said core retaining plates longitudinally of said core and selected dimensions between the center lines of said apertures of said core retaining plates laterally of said core.

3. A device as set forth in claim 1 including a flow connector connected to each of said apertures and extending transverse to an associated core retaining plate.

4. A device as set forth in claim 3 wherein each of said flow connectors includes a tubular portion fastened to an associated core retaining plate and a flange portion having apertures for fastening to flow line connectors to which the device is connected.

5. A device as set forth in claim 3 wherein said flow connector extends into an associated of said apertures and is welded thereto.

6. A device as set forth in claim 1 wherein each of said inner core plates is in the form of a thin flat rectangular heat-conductive sheet having a downwardly inclined end section along about one half the width of said inner core plate and an upwardly inclined end section along about the other one half the width of said inner core plate at one end together with an upwardly inclined end section along about one half the width of said inner core plate and a downwardly inclined end section along about one half the width of said plate at the other end of said inner core plate, said inner core plates having alternating upwardly inclined sections and



downwardly inclined sections such that each said downwardly inclined section on one said inner core plate fits against an upwardly inclined section of a next lower inner core plate to form diagonally extending flow passages between said inner core plates.

7. A device as set forth in claim 6 wherein opposite of said end sections have flat terminal sections that butt against one another to form an end closure along about one half the width and a flow opening along about the other half the width of successive layers of said plates.

8. A device as set forth in claim 7 including a pair of longitudinal edge spacers disposed between and extending along the edges of said inner plates to separate said inner plates.

9. A device as set forth in claim 8 wherein alternate of said edge spacers are staggered at the ends to extend the full length of said plates and to fit between said inclined end sections that are closed by said flat terminal sections.

10. A device as set forth in claim 7 wherein said butting terminal sections are welded together.

11. A device as set forth in claim 1 wherein each of said inner plates has a preselected pattern of indentations that provide strength, spacing between plates and agitation to fluid flow.

12. A device as set forth in claim 1 wherein said first and second outer core plates and said stack of inner core plates are welded together to form an all welded heat exchanger core, and

said first and second core retaining plates and said first and second end wall portions are welded together with said core to form an all welded heat exchanger.

* * * * *

* 2. ALSO APPLIES TO THE DEVICE COLORED DARK BLUE


21
21
17
12
8
8
7
7
13
16
15

Fig. 1


X1
3
COLD OUT
COLD IN
19
18
14
6
15
41
44
45
Z1
Z2
47
46
42
17
6
16
HOT OUT
HOT IN
3
X2

Fig. 2


COLD OUT
Y1
COLD IN
14
15
12
16
17
HOT IN
Y2
HOT OUT

Fig. 3


COLD IN
41
22
A
B
COLD OUT
B
14
61
HOT OUT
A
31
42
64
62
53
16
65
HOT IN

Fig. 4


15
52
70
74
41
14
71
72
51
23
75
73
W
22
61
24
54
64
W
63
62
17
42
60
65
53
16

Fig. 5


W
W
31
26
31
26
W
31

Fig. 6A




Fig. 6




Fig. 7




Fig. 8

FIG. 9




FIG. 10

